**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| DAVID CHAI ELISHAEV,<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, VW CREDIT, INC. d/b/a AUDI FINANCIAL SERVICES,<br><br>Defendants. | Civil Case No.: 1:26-cv-04911<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff David Chai Elishaev ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") (collectively, the "CRA Defendants"), and VW Credit, Inc. d/b/a Audi Financial Services ("Audi Financial")(collectively with the CRA Defendants, the "Defendants"), and alleges, based upon Plaintiff's personal knowledge, information and belief, and the investigation of counsel, as follows:

## INTRODUCTION

1. This is an action for damages arising from Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), and specifically 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b).

2. The CRA Defendants furnished, and Audi Financial reported, that Plaintiff was delinquent on a retail installment contract with Audi Financial, including 30-day and 60-day late-payment notations, notwithstanding that the account was, in substance, fully paid and that any delay in satisfying it was caused solely by the criminal fraud of a third party, Rayan Gosin, for which Rayan Gosin was later arrested and adjudicated guilty of wire fraud and money laundering.

3. That reporting is misleading because it mischaracterizes Plaintiff's creditworthiness. Plaintiff paid the funds necessary to satisfy the account in full, and Audi Financial itself treated the account as satisfied when it released the lien on the vehicle and forwarded the title to Plaintiff. The only reason the account was not timely reflected as paid in Audi Financial's own systems was Rayan Gosin's fraud, not any failure by Plaintiff to pay.

4. Plaintiff disputed this reporting with the CRA Defendants on two separate occasions, first in December 2025 and again in or around May 2026, and each time provided documentation substantiating that the delinquency was the product of third-party fraud rather than any default by Plaintiff.

5. Despite that documentation, Defendants continued to verify, maintain, and furnish the inaccurate delinquency, causing Plaintiff to be denied credit and extended credit only on unfavorable terms.

## PARTIES

6. Plaintiff is a natural person who resides in Queens, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

7. Equifax is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax may be served through

its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

8. Experian is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian may be served through its registered agent, C T Corporation System, 330 North Brand Boulevard, Glendale, California 91203.

9. Trans Union is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10. Audi Financial is a financial institution that conducts business in the state of New York, including within this District, and maintains its principal place of business at 1401 Franklin Blvd, Libertyville, IL, 60048-4460, Audi Financial can be served at its registered agent for service Corporation Service Company at 100 Shockoe Slip Fl 2, Richmond, VA, 23219-4100.

11. Audi Financial is a "furnisher" of consumer information subject to 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

12. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because substantial part of the events giving rise to this action occurred in this District.

## **FACTS**

### The Account at Issue

14. On or about September 20, 2022, Plaintiff financed the purchase of a vehicle under a retail installment contract serviced by Audi Financial (the "Account"), identified in relevant part by an account number ending in 1665.

15. Plaintiff made his payments on the Account as they became due.

16. In or around 2024, as the term of the Account was nearing its end, Plaintiff engaged a vehicle broker, Optimum Auto, to arrange for the sale of the vehicle and the payoff of the remaining Account balance.

17. Thereafter, Plaintiff entered into an agreement with a third-party buyer, identified as Rayan Gosin, whereby:

a. Plaintiff would arrange a buyout and transfer the car to the buyer;

b. The buyer would remit payment directly to Audi Financial; and

c. The payment would fully satisfy the remaining balance

18. Plaintiff paid the broker approximately $16,433.99, in good faith, to facilitate the buyout and payoff of the Account.

19. The broker then sold the vehicle to a third party, Rayan Gosin.

20. As part of that sale, Rayan Gosin issued a check payable to Audi Financial intended to satisfy the remaining balance on the Account.

21. Before that check was returned as fraudulent, Audi Financial released the lien on the vehicle and forwarded the title to Plaintiff, reflecting that Audi Financial itself had treated the Account as paid off.

22. Relying on the reasonable belief that the payoff had been completed, Plaintiff forwarded the title to the broker. At that time, Plaintiff had no knowledge that the check was invalid.

23. The check issued by Rayan Gosin was fraudulent and ultimately bounced.

**Ryan Gosin's Fraud Scheme and Criminal Conviction**

24. Rayan Gosin subsequently and fraudulently resold the vehicle at auction and absconded with the proceeds.

25. Plaintiff later learned that Rayan Gosin had engaged in a broader pattern of similar fraudulent conduct victimizing multiple consumers.

26. Rayan Gosin was arrested and ultimately adjudicated guilty of money laundering and wire fraud in connection with similar schemes.

27. Plaintiff separately reported this fraud to the Federal Trade Commission, which issued Plaintiff an Identity Theft Report, Report No. 185907403, describing that Rayan Gosin took Plaintiff's vehicle, incurred negative payment history that Plaintiff did not owe, sold the vehicle at auction, and never paid the balance to Audi Financial.

**The Fraud, Not Any Default by Plaintiff, Delayed Payoff of the Account**

28. Because of Rayan Gosin's fraud, the Account was not timely reflected as satisfied in Audi Financial's records, notwithstanding Plaintiff's good-faith payment to the broker.

29. The broker ultimately paid the outstanding Account balance in full.

30. As a direct result of the delay caused solely by Rayan Gosin's fraud, Audi Financial furnished, and the CRA Defendants published, 30-day and 60-day late-payment notations concerning the Account.

31. The Account currently carries, and at all relevant times carried, a reported balance of $0.

**The Reporting Is Misleading Because It Mischaracterizes Plaintiff's Creditworthiness**

32. A delinquency or late-payment notation communicates to lenders and other users of a consumer report that a consumer failed, through the consumer's own action or inaction, to satisfy a payment obligation when due.

33. That is not what happened here. Plaintiff paid the broker the full amount necessary to satisfy the Account. Audi Financial itself treated the Account as paid off when it released the lien and forwarded the title to Plaintiff. The only reason the Account was not timely satisfied in Audi Financial's own systems was the criminal fraud of Rayan Gosin, a third party later convicted of wire fraud and money laundering for similar schemes.

34. Reporting the Account as delinquent under these circumstances, without disclosing or accounting for the fraud that caused the delay, creates a false and damaging impression that Plaintiff is not a reliable, creditworthy borrower, when in truth Plaintiff did everything a responsible consumer could do to satisfy the Account and was, himself, a victim of the fraud.

**Plaintiff's First Dispute — December 2025**

35. On December 16, 2025, Plaintiff, disputed the delinquency reporting on the Account by letters sent to each of the CRA Defendants, explaining that the reporting was inaccurate and misleading and requesting correction.

36. On or about December 25, 2025, Equifax responded to the dispute stating that the disputed account is not currently reported.

37. On or about January 16, 2026, Plaintiff pulled an updated Equifax credit report and the disputed Account was not reported.

38. However, on or about February 13, 2026, Equifax sent another letter to Plaintiff stating that they reinstated the disputed account.

39. Thereafter, on March 16, 2026, Plaintiff obtained an updated Equifax report through Credit Karma and confirmed that Equifax was once again inaccurately reporting the Account with a 30-day late mark for October 2024, and 60-days late mark for November 2024.

40. Upon information and belief, Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

41. Upon information and belief, Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute.

42. Thereafter, Equifax failed to correct the inaccurate and misleading late notation in connection with the Account which continued to appear in Plaintiff's Equifax credit file.

43. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

44. On or about December 29, 2025, Experian responded that the disputed item was not listed on Plaintiff's report.

45. On or about January 16, 2026, Plaintiff pulled an updated Experian credit report and the disputed Account was not reported.

46. On or about February 17, 2026, Experian issued dispute results indicating the item had been updated, but no changes were made to the delinquency reporting.

47. Thereafter, on February 23, 2026, Plaintiff obtained an updated Experian report and confirmed that Experian was once again inaccurately reporting the Account with a 30-day late mark for October 2024, and 60-days late mark for November 2024.

48. Upon information and belief, Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

49. Upon information and belief, Experian failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute.

50. Thereafter, Experian failed to correct the inaccurate and misleading late notation in connection with the Account which continued to appear in Plaintiff's Experian credit file.

51. Experian failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

52. On or about December 24, 2025, in response to Plaintiff's dispute, TransUnion refused to block the disputed information but stated it would investigate the disputed information.

53. On or about January 16, 2026, Plaintiff pulled an updated Trans Union credit report and the disputed Account was not reported.

54. Thereafter, on February 23, 2026, Plaintiff obtained an updated Trans Union report through CreditKarma and confirmed that Trans Union was once again inaccurately reporting the Account with a 30-day late and 60-day late mark but this time for July 2023 and August 2023.

55. Upon information and belief, Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

56. Upon information and belief, Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute.

57. Thereafter, Trans Union failed to correct the inaccurate and misleading late notation in connection with the Account which continued to appear in Plaintiff's Trans Union credit file.

58. Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

**Plaintiff's Second, More Fully Documented Dispute — May and June 2026**

59. Because the first round of disputes did not resolve the inaccurate reporting, on or about May 30, 2026, Plaintiff, sent further written disputes to each CRA Defendant, again challenging the delinquency reporting on the Account.

60. Each of the second-round dispute letters explained, in substance, that the reported delinquency arose solely from Rayan Gosin's fraud, that Plaintiff had paid the broker in good faith to satisfy the Account, that Audi Financial had released the lien and title before Rayan Gosin's check bounced, and that Rayan Gosin had since been arrested and adjudicated guilty of money laundering and wire fraud for this and similar schemes.

61. Each letter further explained, in Plaintiff's own words, that "this reporting is misleading because it mischaracterizes [Plaintiff's] credit worthiness," because "the delinquency was not the result of financial irresponsibility, but rather a direct consequence of a third-party fraud scheme in which [Plaintiff] was a victim," and requested a full reinvestigation, immediate removal of the inaccurate delinquency notations, and correction of the account history to reflect that any late payments were the result of documented fraud.

62. Plaintiff enclosed supporting documentation with each second-round dispute letter, including his FTC Identity Theft Report (Report No. 185907403) describing Rayan Gosin's fraud, a receipt showing payment of the $16,433.99 to the broker, the Judgment in the criminal case against Ryan Gosin, Plaintiff driver's license, social security card, and proof of Plaintiff's current address.

63. The dispute letters were sent via certified mail to each of the CRA Defendants.

**The CRA Defendants' Method for Considering Consumer Credit Reporting Disputes**

64. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

65. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

66. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

67. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

68. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

69. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

70. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

71. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

72. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

73. The data furnishers, like Audi Financial, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

74. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Experian’s Unreasonable Reinvestigation of Plaintiff’s Second Dispute**

75. On June 16, 2026, Experian responded in writing and informed Plaintiff that it would not reinvestigate Plaintiff’s dispute.

76. Experian’s letter stated that it had previously blocked the Account from reporting based on an identity theft report Plaintiff had submitted, but that the “credit grantor,” Audi

Financial, had subsequently certified the information's accuracy, causing Experian to rescind the block.

77. Experian's response improperly framed Plaintiff's dispute as identity theft and, upon information and belief, Experian incorrectly processed Plaintiff's dispute.

78. Experian's letter also did not address the additional documentation and explanation Plaintiff provided with the May 30, 2026 dispute concerning Rayan Gosin's fraud and criminal conviction, and, upon information and belief, Experian did not review that documentation before declining to reinvestigate, as required by 15 U.S.C. § 1681i(a)(4).

79. Upon information and belief, Experian failed to send Audi Financial an ACDV pursuant to Plaintiff's May 2026 dispute.

80. Upon information and belief, Experian failed to conduct a reasonable reinvestigation of Plaintiff's May 2026 dispute.

81. Thereafter, Experian failed to correct the inaccurate and misleading late notations in connection with the Account which continued to appear in Plaintiff's Experian credit file.

82. Experian failed to conduct a reasonable reinvestigation of Plaintiff's May 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

**Trans Union's Unreasonable Reinvestigation of Plaintiff's Second Dispute**

83. On or about June 10, 2026, Trans Union issued a written response to Plaintiff's second dispute.

84. The letter from Trans Union stated that Plaintiff's dispute did not appear to come from someone Plaintiff authorized and therefore, Trans Union did not process Plaintiff's request. Trans Union's response to Plaintiff's dispute

85. Trans Union's responded this way even though Plaintiff signed the dispute letter, and provided a copy of his driver's license, social security card, and proof of mailing address.

86. Upon information and belief, Trans Union failed to send Audi Financial an ACDV pursuant to Plaintiff's May 2026 dispute.

87. Upon information and belief, Trans Union failed to review all relevant information Plaintiff provided with his May 2026 dispute.

88. Thereafter, Trans Union failed to correct the inaccurate and misleading late notations in connection with the Account which continued to appear in Plaintiff's Trans Union credit file.

89. Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's May 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

**Equifax's Unreasonable Reinvestigation of Plaintiff's Second Dispute**

90. Upon information and belief, Equifax sent Audi Financial an ACDV in connection with Plaintiff's second dispute. Upon information and belief, when sending the ACDV to Audi Financial, Equifax attached Plaintiff's dispute letter and supporting documentation.

91. On or about June 26, 2026, Equifax issued dispute results in response to Plaintiff's second dispute wherein Equifax stated "our investigation concluded that the item belongs to you."

92. Equifax's response improperly framed Plaintiff's dispute as identity theft and, upon information and belief, Experian incorrectly processed Plaintiff's dispute. Plaintiff never disputed that the Account was opened fraudulently.

93. Equifax's response and updated reporting also erroneously listed the late payment notations for the months of June and July of 2024.

94. Upon information and belief, Equifax failed to review all relevant information Plaintiff provided with his second dispute.

95. Thereafter, Equifax failed to correct the inaccurate and misleading late notations in connection with the Account which continued to appear in Plaintiff's Equifax credit file, except now the notations were appearing for the months of June and July of 2024.

96. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's May 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

**Audi Financial's Unreasonable Dispute Reinvestigation**

97. Upon information and belief, in or around June 2026, Defendant Audi Financial received Equifax's ACDV, dispute letter, and supporting documentation, and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

98. Upon information and belief, Audi Financial failed to review all relevant information provided by Equifax regarding Plaintiff's second dispute.

99. Upon information and belief, in response to the ACDV from Equifax, Audi Financial verified the late notations as accurate to Equifax but updated its reporting to erroneously reflect the late notations association with the months of Juen and July 2024.

100. Audi Financial violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable

**Plaintiff's Damages**

101. Plaintiff has suffered concrete financial harm as a result of Defendants' inaccurate credit reporting.

102. Plaintiff submitted auto loan applications which were denied. Upon information and belief, these denials resulted from Defendants' reporting of the misleading Audi Financial late notations.

103. These denials were directly caused by the inaccurate and damaging reporting of Plaintiff's account, resulting in lost credit opportunities and financial harm.

104. In or around March 2026, Plaintiff also applied for a credit card with Capital One and, upon information and belief, was approved at less favorable terms than he otherwise would have been had it not been for Equifax's reporting of the misleading Audi Financial late notations.

105. The credit limits on Plaintiff's existing credit cards were also reduced as a result of Defendants' reporting of the misleading Audi Financial late notations.

106. In preparing and selling consumer reports about Plaintiff, wherein the CRA Defendants published to Plaintiff's potential creditors and existing creditors materially misleading and inaccurate information about Plaintiff, the CRA Defendants failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

107. As a result of Defendants' inaccurate and misleading reporting and failure to reasonably reinvestigate, Plaintiff has suffered damage to his credit standing and reputation, adverse credit decisions, loss of time, out-of-pocket expense, and frustration, anxiety, and emotional distress from repeatedly disputing a delinquency that resulted from a fraud committed against him, rather than from any default of his own.

108. As a standard practice, the CRA Defendants do not conduct independent investigations of consumer disputes; instead, they rely solely on the furnisher's response, despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp*., 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs*., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols*., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

109. Here, after each CRA Defendant was twice placed on notice — in December 2025 and again in May and June 2026 — that the disputed delinquency arose solely from documented third-party fraud, and after Plaintiff supplied documentation substantiating that fraud, each CRA Defendant nonetheless continued to verify, maintain, or furnish the delinquency without correction.

110. Audi Financial verified the disputed information as accurate to the CRA Defendants notwithstanding its own record that it had released the lien and title to Plaintiff on the reasonable understanding that the Account had been paid off, and notwithstanding the broker's ultimate payment of the outstanding balance in full.

111. Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Defendants' violations of the FCRA were willful.

112. At all relevant times, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

113. At all relevant times, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff.

## COUNT I

### 15 U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

### (Against Defendants Equifax, Experian and Trans Union)

114. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

115. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

116. On at least one occasion during 2026, Each CRA Defendant prepared inaccurate and misleading consumer reports concerning Plaintiff.

117. Each CRA Defendant readily sold such inaccurate and misleading reports to one or more third parties, thereby misrepresenting Plaintiff and ultimately Plaintiff's creditworthiness.

118. Each CRA Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

119. As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate and misleading credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate and misleading credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of receiving adverse credit decisions.

120. The CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, each CRA Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**

**15 U.S.C. § 1681i**

**Failure to Perform a Reasonable Reinvestigation**

**(Second Claim of Relief Against Each CRA Defendant)**

122. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

123. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposed a 30 day time limit for the completion of such an investigation. *Id*.

124. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

125. On at least one occasion in the past year, Plaintiff disputed the inaccurate and misleading information with each CRA Defendant and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to their, namely, the late notations, and balance reported about his Audi Financial Account.

126. In response to Plaintiff's dispute, each CRA Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow inaccurate and misleading, and damaging information to remain in Plaintiff's credit file.

127. Each CRA Defendant violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) after Plaintiff notified them that, the Audi Financial late notations was misleading and did not accurately reflect Plaintiff's credit worthiness, and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

128. As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate and misleading credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate and misleading credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of receiving adverse credit decisions.

129. The CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the

Court pursuant to 15 U.S.C. § 1681n. Alternatively, each CRA Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o

**COUNT III**

**15 U.S.C. § 1681s-2(b)**

**Failure to Conduct Investigate and Correct Reporting**

**(First Claim of Relief Against Audi Financial)**

131. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

132. Audi Financial regularly and in the ordinary course of business furnished information concerning the Account to the CRA Defendants.

133. In the past year, Plaintiff disputed the completeness and accuracy of the Account with each CRA Defendant.

134. At least one CRA Defendant notified Audi Financial of one or more of Plaintiff's disputes pursuant to 15 U.S.C. § 1681i(a)(2).

135. After receiving such notice, Audi Financial was required under 15 U.S.C. § 1681s-2(b)(1) to: (a) conduct an investigation concerning the disputed information; (b) review all relevant information provided by the consumer reporting agencies; (c) report the results of its investigations to the consumer reporting agencies; (d) if the information was found incomplete or inaccurate, report those results to all other consumer reporting agencies to which it had furnished the information; and (e) promptly modify, delete, or permanently block information that was inaccurate, incomplete, or could not be verified.

136. Audi Fianncial violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct reasonable investigations of the disputed information.

137. Audi Financial violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to meaningfully review all relevant information provided by the consumer reporting agencies, including the substance of Plaintiff's disputes and the attached supporting documentation.

138. Audi Financial violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report complete and accurate investigation results to the consumer reporting agencies.

139. Audi Financial violated 15 U.S.C. § 1681s-2(b)(1)(D) by failing to report to every consumer reporting agency to which it furnished the Account that the disputed information was inaccurate, misleading, or incomplete.

140. Audi Financial violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block information that was inaccurate, incomplete, materially misleading, or unverifiable.

141. Audi Financial' violations caused the Account to remain in Plaintiff's credit files with the misleading late notations and to be published to creditors after Audi Financial received statutory notices of dispute.

142. As a direct and proximate result, Plaintiff suffered the damages described above.

143. Audi Financial's violations were willful, entitling Plaintiff to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1681n.

144. Alternatively, Audi Financial's violations were negligent, entitling Plaintiff to actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York,
August 12, 2026

/s/ *David Pinkhasov*
David Pinkhasov, NY # 5925904
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff*
*David Chai Elishaev*